# UNITED STATES DISTRICT COURT

EASTERN District of NEW YORK

UNITED STATES OF AMERICA
V.
WILLIAM COBB

**JUDGMENT IN A CRIMINAL CASE**

Case Number: CR-04-203(arr)

USM Number: 11595-052

PHILIP R. KATOWITZ, ESQ
Defendant's Attorney

**THE DEFENDANT:**

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s) which was accepted by the court.

☑ was found guilty on count(s) two & five of the superseding indictment. after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC 846, | CONSPIRACY TO DISTRIBUTE AND POSSESS WITH | | TWO |
| 21 USC 841(a)(1), | COCAINE BASE AND COCAINE. | | |
| 21 USC 841(b)(1)(A)(iii) | | | |

The defendant is sentenced as provided in pages 2 through 11 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

8/15/2006
Date of Imposition of Judgment

Signature of Judge

ALLYNE R, ROSS U.S.D.J.
Name of Judge Title of Judge

8/15/2006
Date

AO 245B (Rev. 06/05) Judgment in a Criminal Case
Sheet 1A

Judgment—Page 2 of 11

DEFENDANT: WILLIAM COBB
CASE NUMBER: CR-04-203(arr)

# ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC 841(b)(1)(B)(ii) (II) | | | |
| 21 USC 841(a)(1) & 21 USC 841(b)(1)(C) | DISTRIBUTION & POSSESSION WITH INTENT TO DISTRIBUTE COCAINE BASE. | | FIVE |

DEFENDANT: WILLIAM COBB
CASE NUMBER: CR-04-203(arr)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

two hundred and forty (240) months.

☑ The court makes the following recommendations to the Bureau of Prisons:

THAT THE DEFT. BE HOUSED IN A FACILITY AS CLOSE AS POSSIBLE TO THE METROPOLITIAN AREA. IN ADDITION, IF NEEDED, DEFT SHALL PARTICIPATE IN A SUBSTANCES ABUSE TREATMENT PROGRAM WHILE INCARCERATED.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

- ☐ at ____________ ☐ a.m. ☐ p.m. on ____________ .
- ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

- ☐ before 2 p.m. on ____________ .
- ☐ as notified by the United States Marshal.
- ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on ____________ to ____________

at ____________, with a certified copy of this judgment.

____________
UNITED STATES MARSHAL

By ____________
DEPUTY UNITED STATES MARSHAL

DEFENDANT: WILLIAM COBB
CASE NUMBER: CR-04-203(arr)

# ADDITIONAL IMPRISONMENT TERMS

Accordingly the deft is sentenced on count two to 240 months incarceration which shall run concurrently to count five and the undischarged term of imprisonment that the deft is serving. As to count five the deft is sentenced to 240 months incarceration to run concurrently to count two and the undischarged term of imprisonment the deft is serving for a total of 240 months incarceration.

DEFENDANT: WILLIAM COBB
CASE NUMBER: CR-04-203(arr)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

FIVE (5) YEARS.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

DEFENDANT: WILLIAM COBB
CASE NUMBER: CR-04-203(arr)

# ADDITIONAL SUPERVISED RELEASE TERMS

1) Deft shall submit his person, residence, place of business, vehicle or any other premises under his control to a search upon request, by the U.S. Probation Department; such request being made on REASONABLE SUSPICION that contraband or evidence of a violation of a condition of supervision may be found – and pursuant to the formal policy of the U.S. Probation Department. The search is only to be conducted at a time and in a manner reasonable under the circumstances. Failure by the deft to submit to a search may be grounds for revocation; and the deft shall inform any other residents that the premises may be search pursuant to this condition.

2) IF NEEDED;DEFT SHALL PATICIPATE IN SUBSTANCE ABUSE TREATMENT AS SELECTED BY THE PROBATION DEPARTMENT. TREATMENT MAY INCLUDE OUTPATIENT AND/OR INPATIENT TREATMENT OR DETOXIFICATION PROGRAM AS DETERMINED BY THE PROBATION DEPARTMENT. DEFT SHALL ABSTAIN FROM ALL ILLEGAL SUBSTANCES AND/OR ALCOHOL, UNLESS GRANTED A PRESCRIPTION BY A LICENSED PHYSICIAN AND PROFF OF SAME IS PROVIDED TO THE PROBATION DEPARTMENT. DEFT SHALL CONTRIBUTE TO THE COST OF SERVICES RENDERED VIA CO-PAYMENT OR FULL PAYMENT IN AN AMOUNT TO BE DETERMINED BY THE PROBATION DEPARTMENT, BASED UPON THE DEFT'S ABILITY TO PAY AND/OR THE AVAILABILITY OF THIRD PARTY PAYMENT.

DEFENDANT: WILLIAM COBB
CASE NUMBER: CR-04-203(arr)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ |

☐ The determination of restitution is deferred until ______. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ ____________

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: WILLIAM COBB
CASE NUMBER: CR-04-203(arr)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A ☑ Lump sum payment of $ 200.00 due immediately, balance due

☐ not later than ________, or
☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal ______ (e.g., weekly, monthly, quarterly) installments of $ ______ over a period of ______ (e.g., months or years), to commence ______ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal ______ (e.g., weekly, monthly, quarterly) installments of $ ______ over a period of ______ (e.g., months or years), to commence ______ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within ______ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

THE COURT: There are a number of disputes, regarding the guideline calculation. First, as to the base offense level issue, I include that the defendant's knowing involvement in a crack distribution conspiracy involving over 1.5 kilograms of crack cocaine was amply supported by the trial testimony. This was established in part by the credible

testimony of trial witnesses cited at page five of the government's brief, and was supplemented by the credible testimony of a number of other government witnesses: The presentence report "Frame of Reference" language does not refer to the specific testimony on which I have relied. As the report makes clear, the witnesses' testimony of specific amounts as distinguished from unestimated amounts as distinguished from unestimated amounts wasconservative.

I also believe that the three level role enhancement is appropriate under the advisory guidelines. Plainly, there are five or more participants, including the Defendant Harris, McDonnell, McIntosh, Harley, Darren Barrett, Reed, Pettus, Wright, King, Cleveland, Blackshear and Helm. At a minimum, Mr. Cobb played a role in recruiting a number of dealers into the distribution conspiracy, and such recruitment clearly suffices to establish a supervisory role.

The two level firearms enhancement is also supported by trial evidence. Several witnesses testified that when Barrett was causing a disturbance in front of Harley's apartment building, which was established to be a primary crack selling location for the conspiracy, Cobb approached Barrett carrying a firearm and ordered him to leave.

As the government argues, because Harley's apartment was a central location for the conspiracy it is not improbable that Cobb was motivated, at least in part, by a desire to

protect the drug spot from attention and the consequent investigation of police.

Moreover, the government is correct that Cobb's presence with Harris when the latter held a gun to Barrett's head after Barrett told Harley not to sell crack for the conspiracy independently suffices to support the enhancement. Cobb had actual knowledge that his coconspirator Harris possessed a gun in furtherance of the conspiracy. This under the guideline and case law construing it supports the enhancement.

The final guidelines dispute is the two level enhancement for obstruction of justice.

In urging the enhancement the government relies primarily on trial evidence that the defendant, while incarcerated on prior state charges related to the instant prosecution, in a letter to Jennifer McIntosh, his then girlfriend, asked McIntosh to lie to defendant's then attorney about the defendant's whereabouts on two dates when he was charged with dealing in crack in Glens Falls.

The defendant disputes the propriety of the enhancement and the probation department concurs that the enhancement is not warranted. The probation department concludes that: "It is unclear whether the defendant's attempt in this case to convince a witness to lie to his own attorney rises to the level of obstruction within the meaning

of guideline 3C1.1," emphasizing that, "the facts in this case seem to fall short of warranting the adjustment."

More recently the government has urged that an obstruction enhancement is also warranted by a letter apparently signed by defendant and directed to Harris' counsel purportedly exonerating Harris and McDonnell and assuming sole responsibility for all criminal conduct committed.

The probation department disagrees, opining that the facts in this case fall short of warranting the adjustment as it is uncertain whether the letter "constitutes providing materially false information to a judge as defined in application note 4F of the guidelines."

While I am inclined on the facts here to agree with the probation department in both instances, I note that this is not an issue that must be resolved. As discussed below, I have concluded in this case after consulting and balancing all of the statutory factors to impose a sentence below the advisory guidelines and my conclusion as to an appropriate sentence under the statute would not be affected by any deferential in the advisory guidelines attributable to an obstruction enhancement.

Accordingly, I conclude that under the advisory guideline defendant's adjusted offense level is either 43 or 45 with a criminal history Category One, both of which carry a mandatory life prison term.

Addressing the remaining statutory factors I turn first to the nature and circumstances of the offense.

Defendant's offense is an unquestionably serious one. He functioned at a managerial level of an extensive crack cocaine distribution conspiracy involving over ten participants during an, approximately, two-year period that distributed a total of well in excess of 1.5 kilograms of crack cocaine in the Glens Falls, New York area. Although defendant's advisory guideline calculation incorporated a weapons enhancement, I note that the trial evidence demonstrated little, if any, violence by defendant in connection with the conspiracy; nor is there any evidence of violent conduct by defendant at any time historically. Indeed, unlike most drug dealers in amounts approximating those in this case, defendant did not based on the trial evidence even regularly carry a weapon in connection with his drug dealing, much less fire or brandish one with the exception of the single incident involving the disturbance caused by Barrett near Harley's apartment building. In fact, in his testimony about this incident Barrett himself denied that Cobb ever pointed the gun at him.

Though Harley testified that defendant carried a gun every time he entered her home, the testimony of the government's other witnesses seriously undermines the accuracy of this assertion.

Peter Helm, for example, who regularly sold drugs out of Harley's apartment testified that he saw Cobb with a firearm only once.

And Jennifer McIntosh who was in an intimate relationship with the defendant for an extended period and was also involved in the drug conspiracy saw Cobb possess a gun on only one occasion when it remained in his belt. Though Cobb was present when Harris threatened Barrett with a gun for telling Harley not to sell crack, none of the various witnesses who recounted this incident testified that Cobb in any way participated in Harris' threats.

Finally, all of the witnesses who recounted the beating of Sway testified that Harris was responsible for the violence. No witness alleged that Cobb participated in this violence.

The absence of any violence by Cobb coupled with the evidence that he possessed a weapon on only a very limited number of occasions over the conspiracy has some bearing on an assessment of the seriousness of his conduct.

I also note that although I am in agreement with the probation department and the government that under the advisory guidelines defendant's role is properly characterized as supervisory in a conspiracy involving five or more participants, there is a vast discrepancy between roles played in the conspiracy by Harris and Cobb, the former of whom under

the guidelines is accorded only one level more than Defendant Harris as a result of his role.

The trial evidence made clear that it was Harris' crack conspiracy. He made all significant decisions, was the recipient of the conspiracy's profits, organized its participants and kept them in line by force, violence and intimidation. Cobb was Harris' helper and supervised participants in Glens Falls in Harris' absence. Apart from very routine day-to-day matters, however, Cobb appears to have had virtually no decision-making authority. Although Cobb technically fits within the guidelines definition of manager, the trial evidence strongly suggested that Cobb really acted as more of a gofer doing Harris' bidding, as in accompanying him on trips to New York City to secure more crack and even babysitting Harris' girlfriend Jennifer McDonnell in Harris' absence.

Nor is there is any evidence of Cobb's sharing in the profits in a manner that substantially exceeded that of the average worker. Indeed, during the period of conspiracy defendant was addicted to crack, and like other dealers, used all available income to support his drug habit.

This vast discrepancy between the roles of the two defendants also serves in my view to mitigate somewhat the seriousness of Cobb's offense.

As to the history and characteristics of the

defendant, the defendant's criminal history category of one is, indeed, remarkable in view of his guideline sentence of life imprisonment. Apart from conduct leading to his recent state conviction which constitutes part of the instant offense defendant's convictions are one at age 20, some 17 years ago, for criminal possession in the fifth degree, for which he received a probationary sentence, and a second possession conviction in 1997, for which he received one year probation.

Until his incarceration for conduct constituting part of the instant conspiracy, defendant has spent virtually no time in jail and has had very few brushes with the law, and as noted, has participated in virtually no violent conduct.

Defendant's crack addiction, which undoubtedly motivated his involvement in the instant conspiracy, is similar to the motivation of all of the goverment's cooperators in this case.

Further, defendant is now 37 years old and faces a mandatory minimum sentence of 20 years imprisonment. I also note, as has the probation department, the anamoly that the defendant who, unlike Harris, was not charged with a firearms offense, but rather, received a guidelines enhancement based upon Harris' firearms offense, actually faces a longer guideline sentence than Harris, the most culpable player in the conspiracy whose culpability far exceeds that of defendant.

In light of all these circumstances, I have reached the conclusion that a prison sentence of 20 years is sufficient but of no greater severity than necessary to accomplish the goals of sentencing. A 20-year sentence is an exceedingly severe one, especially for a defendant with a very limited criminal history, whose conduct has not been characterized by violence and whose criminal activity was undoubtedly motivated by severe addiction.

Given his age, defendant will be in his mid 50s. By the time he is released no longer addicted to crack, which I believe motivated his conduct, and of an age that recidivism is highly unlikely.